UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SOVEREIGN BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-CV-05530 (AKH) |
| | ) | |
| NORTHERN LEASING SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SOVEREIGN BANK'S MOTION FOR SUMMARY JUDGMENT

---

Dated:  November 1, 2010

Louis T. DeLucia
Carl W. Oberdier
Matthew L. Curro
SCHIFF HARDIN LLP
900 Third Avenue
New York, New York 10022
Telephone:  (212) 753-5000
Facsimile:  (212) 753-5044

## <u>TABLE OF CONTENTS</u>

I. Preliminary Statement ................................................................................................. 1

II. Background Facts ...................................................................................................... 2

    A.   The Loans.............................................................................................................. 2

    B.   The Guaranty ........................................................................................................ 3

    C.   Northern's Payment Obligations......................................................................... 4

    D.   Events of Default Under the Loan Documents and  Northern's Failure to Remit the Payment Deficiencies .................................................................................................. 6

III. Sovereign is Entitled to  Summary Judgment on The Guaranty................................ 8

    A.   The Standard  for Summary Judgment ................................................................ 8

    B.   Sovereign has Satisfied Each of the  Elements Required for Summary Judgment ........... 9

IV. Conclusion ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Charter Oak Fire Ins. Co. v. Tri-County Fire & Safety Equip. Co.*, 636 F. Supp. 2d 193 (E.D.N.Y. 2009)..................................................................................................... 8, 10

*Harris Corp. v. McBride and Assoc., Inc.*, 2002 WL 1677695 (W.D.N.Y. July 19, 2002) .......... 8

*Maxim Group LLC v. Life Partners Holdings, Inc*., 690 F. Supp. 2d 293 (S.D.N.Y. 2010) .......... 9

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994)................................................ 8

*Rule v. Brine, inc.*, 85 F.3d 1002 (2d Cir. 1996)........................................................................ 10

*R/S Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29 (2002) ...................................................... 9

*Viola v. Philips Med. Sys. Of North Am.*, 42 F.3d 712 (2d Cir. 1994)........................................... 8

**Federal Rules of Civil Procedure**

*Fed. R. Civ. Pro. 56* .................................................................................................................... 8

Plaintiff Sovereign Bank ("**Sovereign**") respectfully submits this memorandum of law in support of its motion for an order granting it summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

# I.
## PRELIMINARY STATEMENT

Sovereign commenced this action seeking judgment for approximately $8.69 million that it is owed pursuant to three Servicer Limited Guaranties[1] executed by defendant Northern Leasing Systems Inc. ("**Northern**").  Pursuant to the express terms of the Guaranties, Northern guaranteed certain payment obligations under the Loan Agreements in an amount not to exceed ten percent of approximately $89 million in loans made by Sovereign to two of Northern's affiliates.  Following a number of uncured defaults under the Loan Agreements and Guaranties, Sovereign gave written notice to Northern requiring it to deposit the full outstanding amount of its Guaranties into a Lockbox Account under Sovereign's control, all in accordance with the explicit terms of the Guaranties.  Northern failed to do so, and has continued to refuse to do so. Sovereign now seeks summary judgment for such amount.

The material facts are not in dispute.  In its Answer to the Complaint in this case, filed on September 22, 2010 [Docket No. 4] ("**Answer**"), Northern admits execution and delivery of the Loan Agreements and Guaranties.[2]  Northern further admits that Sovereign loaned "substantial amounts" to the Borrowers under these agreements (and does not dispute that such amounts are approximately $89 million).[3]    Furthermore, Northern's defaults under the Guaranties are

---

[1] To the extent not otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the supporting Declaration of William Kendall in Support of Sovereign Bank's Motion for Summary Judgment (the "**Kendall Decl.**").

[2] *See* Answer ¶ 6.

[3] *See* Answer ¶ 6.

indisputable.  The Loan Agreements and Guaranties require certain monthly payments to be made to Sovereign, and despite notice and opportunity to cure, those payments were not made, causing the occurrence of material Events of Default under the Loan Agreements and, in turn, the Guaranties.  The Guaranties plainly provide Sovereign the right, upon an Event of Default, to require Northern to deposit the entire amount of its Guaranties into the Lockbox Account, and to pay such sums to Sovereign.

Northern has no defenses to the enforcement of its obligations to Sovereign.  Northern has raised no meritorious defenses or counterclaims, other than boilerplate affirmative defenses that lack factual support and that should be, and usually are, summarily dismissed.

Accordingly, Sovereign is entitled to summary judgment.

## II.
## BACKGROUND FACTS

This action involves three servicer limited guaranties executed by Northern, pursuant to which Northern agreed to a limited but well defined guaranty of certain payment obligations due in connection with various loans made by Sovereign to two of Northern's affiliates – Northern Capital Associates XVI, L.P. ("**Associates XVI**") and Northern Capital Associates XII, L.P. ("**Associates XII**," and together with Associates XVI, the "**Borrowers**").

In 2007, the Borrowers sought and obtained Loans from Sovereign for the purpose of purchasing from Northern certain pools of equipment leases Northern had assembled for sale, as well as the related equipment.  The leases and the related equipment were then pledged as collateral to Sovereign to secure the Loans.

### A.    The Loans

Sovereign loaned approximately $89 million to the Borrowers over roughly two years, as follows:

- In 2007, Sovereign advanced approximately $50 million to Associates XII.

- In 2008, Sovereign advanced approximately $24 million to Associates XII.

- In September 2009, Sovereign and the Borrowers agreed to certain amendments to the 2007 Loan Agreement and 2008 Loan Agreement, and Sovereign agreed to make one additional term loan of approximately $15 million to Associates XVI.

*See generally* Kendall Decl., Exs. 1 – 3 (Loan Agreements).

Each of these advances was further evidenced by a related promissory note, which contained an amortization schedule that provided the Borrowers a specified repayment schedule. A total of $89,199,568.58 was advanced pursuant to eight separate promissory notes. As of the date hereof, the total outstanding principal balance of the Loans is not less than $34,880,000, plus accrued interest, costs and other fees, such as attorneys' fees and expenses, to which Sovereign is entitled to under the Loan Agreements. *See* Kendall Decl. ¶¶ 5-7.

### B.   **The Guaranty**

In addition to originating the leases that comprise Sovereign's collateral, Northern also services the leases. *See* Kendall Decl. ¶ 4. In its capacity as Servicer, and to induce Sovereign to make the Loans, Northern agreed to a limited guaranty of certain of the Borrowers' payment obligations due under the Loan Agreements. In connection with each of the Loans, Northern executed Servicer Limited Guaranties, originally dated as of August 29, 2007, July 2, 2008, and September 4, 2009, respectively (each a "**Guaranty**" and collectively, the "**Guaranties**"), pursuant to which Northern agreed to guarantee certain of the Borrowers' payment obligations due to Sovereign up to an aggregate amount equal to ten percent of the original principal amount of the Loans (said ten percent being approximately $8.9 million). Specifically, Section 2 of each of the Guaranties provides as follows:

3

> In order to induce Lender to enter into the Loan Agreement and make the Loan to Borrower, and in consideration thereof, Guarantor [Northern] unconditionally guarantees to Lender the prompt payment, when due, of any Payment Deficiencies as herein defined, and Guarantor shall pay all such Payment Deficiencies, as and when due, until Guarantor has paid to Lender an aggregate amount equal to ten (10%) percent of the original principal amount of the Loan made by Lender to Borrower pursuant to the Loan Agreement (the "**Maximum Payment Amount**").

*See* Kendall Decl., Exs. 11 – 13 (Guaranties), § 2.

       C.     <u>**Northern's Payment Obligations**</u>

Under the Loan Agreements, the Borrowers must repay each of the Loans pursuant to separate amortization schedules issued in connection with each promissory note and related advance. On each Payment Date, which is defined to be the 15th of each month, the Borrowers must pay to Sovereign the Required Payment (among other amounts). *See* Kendall Decl. ¶ 9.

Pursuant to the Loan Agreements, there are three distinct sources (the "**Funding Sources**") from which funds are derived to pay the monthly Required Payments. First, Sovereign receives funds directly from the underlying lessees, who deposit their periodic lease payments directly into the Lockbox Account, which funds are then wire transferred to an account held at, or directly controlled by, Sovereign. *See* Kendall Decl. ¶ 10(a). Second, Sovereign receives funds from Northern in the form of Square-up Payments, which are the residual amounts paid to Northern by lessees who do not deposit their lease payments directly into the Lockbox Account, but who rather pay their lease obligations by check or other means directly to Northern. *See* Kendall Decl. ¶ 10(b). And, lastly, various reserve accounts were established under the Loan Agreements to provide a source of funds to cover, in part, any possible shortfall in payments due from the Borrowers after application of funds obtained from the other two Funding Sources.[4] *See* Kendall Decl. ¶ 10(c).

---

[4] Additional details regarding the Funding Sources are contained in the Kendall Declaration.

Northern's obligations under the Guaranties are triggered when the amounts received by Sovereign from the three Funding Sources are insufficient to cover the Required Payment. Thus, under Section 8.3(d) of the Loan Agreements and Section 3.1 of the Guaranties, if, on any Determination Date, the amounts received by Sovereign from the three Funding Sources are insufficient to satisfy the amounts due to Sovereign on the applicable Payment Date, such insufficiency is a "Payment Deficiency," and Northern is required to pay into the Lockbox Account, or an account designated by Sovereign, such Payment Deficiency. *See* Kendall Decl. ¶ 11. Specifically, the relevant provisions of the Loan Agreements and Guaranties are as follows:

### Section 8.3(d) of the Loan Agreement

In the event that on any Determination Date the aggregate of the amounts received by Lender during the relevant Due Period directly from the Lockbox Account and amounts received from Servicers in the form of the Square-up Payment, after the payment of the amounts set forth under Section 8.3(c)(i), are not sufficient to pay to Lender the amount required under Section 8.3(c)(ii) including the Required Payment after the application of the Reserves and the Additional Reserves for such purpose, Servicer shall, on such Determination Date, pay directly into the Lockbox Account or into an account at Sovereign Bank as directed by Lender by wire transfer the Payment Deficiency as defined in the Servicer Guaranty, but only to the Maximum Amount as defined therein.

### Section 3.1 of the Guaranties

Pursuant to the Loan Agreement, Borrower is required, on each Payment Date, to make payment on the Loan to Lender in accordance with the Amortization Schedule from the Contract Receivables and other proceeds of the Collateral collected by Guarantor, as Servicer of the Contracts, and deposited into the Lockbox Account. If on any Determination Date, the funds available for payment to Lender in the Lockbox Account are less than the amounts required to be paid under Section 8.3(c)(ii) of the Loan Agreement, Guarantor [Northern] shall, on such Determination Date, without notice from Lender, deposit into the Lockbox Account, the amount of such deficiency (the "**Payment Deficiency**"); provided, that, Guarantor shall not be obligated to fund Payment Deficiencies in excess of an aggregate amount equal to the Maximum Payment Amount.

**D.    Events of Default Under the Loan Documents and
Northern's Failure to Remit the Payment Deficiencies**[5]

Northern has defaulted on its payment obligations under the Loan Agreements and Guaranties no fewer than five times.  On each of the Determination Dates for June, July, August, September and October 2010, the amounts received by Sovereign from the three standard Funding Sources were insufficient to cover the total amounts due under the Loan Agreements on the applicable Payment Dates.   The aggregate Payment Deficiencies for those months was $2,714,724.16.   Accordingly, in each instance, Northern's obligation to fund the respective Payment Deficiency was triggered, but Northern failed to remit to the Lockbox Account or to pay to Sovereign the Payment Deficiencies (each failure, a "**Payment Default**").  *See* Kendall Decl. ¶ 12.

Section 6.1 of the Loan Agreements provides that the occurrence of the following constitutes an Event of Default:

> Borrower or Servicer shall fail to pay when due any Indebtedness or other Obligation due Lender, or fail to deposit to the Lockbox Account any payment required to be deposited under the terms of the Agreement, and such failure shall continue unremedied for a period of five (5) Business Days."

*See* Exs. 1 – 3, § 6.1(a).  Accordingly, each Payment Default constitutes an Event of Default under the applicable Loan Agreement.  In turn, Section 7 of the Guaranties provides that an Event of Default under the Loan Agreements constitutes an Event of Default under the Guaranties.  Accordingly, each Payment Default also constituted an Event of Default under each Guaranty.  *See* Kendall Decl., Exs. 12 – 14 (Guaranties), § 7.  Furthermore, each of the foregoing

---

[5] Sovereign brings this action against Northern to enforce the terms of the Guaranties only.  While Events of Default have occurred under the Loan Agreements, such Events of Default are alleged herein because they, in turn, give rise to Events of Default under the Guaranties.  Sovereign reserves any and all rights it may have against Northern and the Borrowers under the Loan Agreements.

payment defaults remained unremedied for a period of five business days (the cure period under the Loan Agreements) and continues to remain unremedied. *See* Kendall Decl. ¶ 13.

Due to Northern's defaults under the Loan Agreements and Guaranties, Sovereign exercised its rights under Section 8 of the Guaranties, which provides as follows:

> Upon the occurrence of an Event of Default, Lender may, in its sole discretion, by written notice to such effect, require Guarantor [Northern] to deposit into the Lockbox Account an amount equal to the difference between the Maximum Payment Amount and the aggregate amount of Deficiency Payments theretofore paid by Guarantor into the Lockbox Account, provided that such amount to be deposited shall in no event be more than the unpaid balance due Lender under all of the Notes or otherwise owing to Lender under the Loan Agreement.

*See* Kendall Decl., Exs. 12 – 14 (Guaranties), § 8.  Accordingly, on June 18, 2010, and in accordance with the terms of the Guaranties, Sovereign provided written notice to Northern that the Guaranty amount was due and demanded that Northern immediately deposit into the Lockbox Account $8,690,527.94, which amount was net of a credit of $235,000 for amounts previously paid by Northern under the Guaranties.  *See* Kendall Decl., Ex. 15.  Northern has consistently and continually failed or otherwise refused to deposit the required amount into the Lockbox Account or to otherwise remit same to Sovereign.  *See* Kendall Decl. ¶ 14.  As a result of Northern's failure to comply with the express terms of the Guaranty, on July 2, 2010, Sovereign commenced the instant action by filing a Complaint with this Court to enforce its rights under the Guaranties [Docket No. 1].  On September 22, 2010, Northern filed its Answer, which included *pro forma* denials of many of the allegations contained in the Complaint, but set forth no affirmative allegations that could present a triable or genuine issue of material fact.  *See generally* Answer.  This matter is thus ripe for summary judgment in favor of Sovereign.

**III.**
**SOVEREIGN IS ENTITLED TO**
**SUMMARY JUDGMENT ON THE GUARANTIES**

Based on the clear and unambiguous terms of the Loan Agreements and the Guaranties, and Northern's indisputable defaults under the Guaranties, Sovereign is entitled to summary judgment.

**A.      The Standard  for Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and...the movant is entitled to judgment as a matter of law."  *See* FED. R. CIV. PRO. 56(c)(2); *see also Viola v. Philips Med. Sys. Of North Am.*, 42 F.3d 712, 715 (2d Cir. 1994).  When determining whether any material facts exist, "[t]he relevant governing law in each case determines which facts are material" and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *See Charter Oak Fire Ins. Co. v. Tri-County Fire & Safety Equipment Co.*, 636 F. Supp. 2d 193, 196 (E.D.N.Y. 2009) (internal citations omitted).

A plaintiff seeking to enforce a contract is entitled to summary judgment if it has "proffered a *prima facie* case of breach of an unambiguous contract," unless the non-movant has created a genuine issue of material fact through the submission of competent evidence.  *Harris Corp. v. McBride and Assoc., Inc.*, 2002 WL 1677695, at *4 (W.D.N.Y. July 19, 2002); *see also Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994) (summary judgment was appropriate for breach of contract where non-moving party failed to submit competent evidence creating a genuine issue of material fact as whether the defendant was in default on his payment obligations).  "The standard for granting summary judgment in contract cases focuses on the

review of the contract's language and the clarity with which the parties' intent is conveyed." *Maxim Group LLC v. Life Partners Holdings, Inc*., 690 F. Supp. 2d 293, 295 (S.D.N.Y. 2010).

The Loan Agreements and Guaranties are governed by New York law.  *See* Kendall Decl., Exs. 1 – 3 (Loan Agreements), § 9.8; Exs. 12 – 14 (Guaranties), §14.  In New York, to establish a cause of action for breach of contract, a plaintiff must demonstrate:  (1) that a contract was formed between the parties, (2) the plaintiff performed on such contract, (3) the defendant failed to perform and (4) damages resulting from defendant's failure to perform.  *See Furia v. Furia*, 166 A.D.2d 694 (2d Dept. 1990).

### B.    Sovereign has Satisfied Each of the Elements Required for Summary Judgment

Sovereign has satisfied each of the elements required under New York law for a breach of contract claim.  Northern cannot offer evidence to create a genuine issue of material fact as to any required element.  Indeed, here, Northern admits that a contract was formed and that Sovereign has performed under such contract.  *See* Answer ¶¶ 6, 12 (admitting that "the Borrowers are parties to agreements as listed in paragraph 6" of the Complaint (*i.e*., the Loan Agreements); "Plaintiff provided loans and accommodations to the Borrowers in a substantial amount;" "certain of the obligations of the Borrowers are secured by pools of equipments leases and the revenue streams therefrom;" and Northern "executed and delivered the documents referred to in Paragraph 12 of the Complaint" (*i.e*. each of the Guaranties)).  Accordingly, there are no issues of material fact in dispute as to the first and second elements for a breach of contract action.

Regarding the third element for breach of contract – the defendant's failure to perform – the Kendall Declaration and the exhibits thereto clearly demonstrate that Northern has failed, and continues to fail, to comply with its obligations under the Guaranties.  Northern's obligations

under the Guaranties are not complicated or subject to divergent interpretations.   Upon the occurrence of an Event of Default, Northern must deposit the guaranty amount (less amounts already paid) into the Lockbox Account.  To date, despite the occurrence of numerous Events of Default, the requisite funds have not been deposited into the Lockbox Account or paid to Sovereign.  *See* Kendall Decl. ¶ 14.

Lastly, the fourth prong of the breach of contract test requires Sovereign to establish its damages from Northern's failure to comply with the terms of the agreement.  Each Guaranty is clear and unambiguous that where an Event of Default has occurred, Sovereign is entitled to require Northern to deposit into the Lockbox Account the full guaranty amount.  The reason is simple:  Sovereign advanced a significant amount of money to the Borrowers and so, as added security, bargained for, and received, the right to demand the full amount due under each Guaranty upon any single Event of Default.  As such, until such amounts are properly paid to Sovereign, Sovereign is damaged to the full extent of the amount it is owed under each Guaranty.

Northern's unsubstantiated and boilerplate denials of certain of the allegations in the Complaint relating to its default under the Loan Agreements and Guaranties are insufficient to establish a triable issue of fact.  To defeat a properly supported summary judgment motion, "the non-movant must offer similar materials setting forth specific facts that show there *is* a genuine issue of material fact to be tried.  The non-movant must present more than a scintilla of evidence, or some metaphysical doubt as to the material facts, and cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Charter Oak Fire Ins. Co. v. Tri-County Fire & Safety Equip. Co.*, 636 F. Supp. 2d 193, 196 (E.D.N.Y. 2009) (emphasis in original) (internal citations and quotations omitted); *see also Rule v. Brine, inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  Northern's breach of

its obligations under the Guaranties is clear and are not subject to any bona fide contest by the defendants, such that Sovereign respectfully requests that this Court grant its motion for summary judgment.

## IV.
## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court enter an order granting Sovereign summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Northern on the grounds that there are no genuine issues of material fact as to any necessary element of Sovereign's claim, and for such other and further relief as this Court deems just and proper.

Dated: November 1, 2010
       New York, New York

Respectfully submitted,

SCHIFF HARDIN LLP

By: /s/ Louis T. DeLucia
    Louis T. DeLucia
    Carl W. Oberdier
    Matthew L. Curro
    900 Third Avenue
    New York, New York 10022
    Telephone:  (212) 753-5000
    Facsimile:  (212) 753-5044

*Attorneys for Sovereign Bank*

NY\50877538.7

11