```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
SOVEREIGN BANK,                                                    :    Case No. 10 CIV05530 (AKH)
                                                                   :
                                                                   :
                        Plaintiff,                                 :
                                                                   :
                                                                   :
            -against-                                              :
                                                                   :
NORTHERN LEASING SYSTEMS, INC.,                                    :
                                                                   :
                                                                   :
                        Defendant                                  :
                                                                   :
------------------------------------------------------------------ X
```

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

 

**MOSES & SINGER LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
(212) 554-7800
*Attorneys for Defendant*

Of Counsel:
Ruth C. Haber (RH-0406)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................... 1
STATEMENT OF FACTS ............................................................................................................ 2
ARGUMENT ................................................................................................................................. 6
I. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ................................... 6
    A. The Standards For Granting Summary Judgment .................................................. 6
    B. Material Questions of Fact Exist Precluding the Grant of Summary Judgment ................................................................................................................ 7
II. SUMMARY JUDGMENT SHOULD BE DENIED IN THE ABSENCE OF DISCOVERY .................................................................................................................... 11
CONCLUSION ............................................................................................................................ 16

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Bank of New York v. TYCO International Group, S.A.*,
    545 F. Supp. 2d 312, 324 (S.D.N.Y. 2008) ................................................................... 10

*In re Bankers Trust Co.*,
    450 F.3d 121 (2d Cir. 2006) ........................................................................................... 10

*Berger v. U.S.*,
    87 F.3d 60, 65 (2d Cir. 1996) ......................................................................................... 13

*Cacace v. Meyer Marketing (Macau Commercial Offshore Co., Ltd.)*,
    589 F. Supp. 2d 314, 323 (S.D.N.Y. 2008) ................................................................... 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 323 (1986) ................................................................................................. 7

*Diesel Props. S.R.L. v. Greystone Business Credit II LLC*,
    No. 07 Civ. 9580, 2009 WL 89115 (S.D.N.Y. Jan. 14, 2009) ......................................... 6

*Enercomp, Inc. v. McCorhill Pub., Inc.*,
    873 F.2d 536, 546 (2d Cir. 1989) ..................................................................................... 8

*In re Enron Corp.*,
    No. 01 B 16034, 2005 WL 3873891 (Bankr. S.D.N.Y. July 29, 2005) .......................... 12

*Giannullo v. City of N.Y.*,
    322 F.3d 139, 140-41 (2d Cir. 2003) ............................................................................... 7

*Hellstrom v. U.S. Dep't of Veterans Affairs*,
    201 F.3d 94, 97 (2d Cir. 2000) ....................................................................................... 12

*Johnson v. Arista Holding, Inc.*,
    2006 WL 3511894, 05 Civ. 9645 at *4 (S.D.N.Y. Dec. 5, 2006) .............................. 12-13

*L.K. Comstock & Co., Inc. v. Perini Corp.*,
    903 F. Supp. 609, 611 (S.D.N.Y. 1995) ........................................................................... 8

*Maxim Group LLC v. Life Partners Holdings, LLC, Inc.*,
    690 F. Supp. 2d 293, 298-99 (S.D.N.Y. 2010) ............................................................ 6, 7

*Mellon Bank, N.A. v. United Bank Corporation of New York*,
    31 F.3d 113, 115 (2d Cir. 1994) ................................................................................... 8, 9

*Miller v. Wolpoff & Abramson, L.L.P.*,
   321 F.3d 292, 303-04 (2d Cir. 2003) .................................................................... 12

*Olaes Enterprises, Inc. v. A.D. Sutton & Sons, Inc.*,
   No. 09 Civ. 8680, 2010 WL 3260064 at *3 (S.D.N.Y. Aug. 6, 2010) .............................. 8

*Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*,
   7 F.3d 1091, 1095 (2d Cir. 1993) ......................................................................... 8

*Schering Corp. v. Home Insurance Co.*,
   712 F.2d 4, 7 (2d Cir. 1983)……………………………………………………………….6

*Shelton v. The Trustees of Columbia University*,
   No. 04 Civ. 6714, 2004 WL 2979781 (S.D.N.Y. Dec. 17, 2004) ................................... 12

*Sutera v. Schering Corp.*,
   73 F.3d 13, 18 (2d Cir. 1995) ............................................................................... 12

*Union Bank, N.A. v. CBS Corp.*,
   No. 08 Civ. 08362, 2009 WL 1675087 (S.D.N.Y. June 10, 2009) ............................ 11-12

## STATE CASES

*Gross v. Neuman*,
   53 A.D.2d 2 (1st Dep't 1976) ............................................................................... 10

*Two Guys from Harrison-N.Y. v. S.F.R. Realty Assocs.*,
   63 N.Y.2d 396, 403, 482 N.Y.S.2d 465 (1984) ........................................................ 10

## FEDERAL STATUTES

Fed. R. Civ. P. 56(c) ................................................................................................... 6

Fed. R. Civ. P. 56(f) .................................................................................................. 13

**PRELIMINARY STATEMENT**

This memorandum of law is submitted on behalf of Defendant Northern Leasing Systems Inc. ("NLS" or "Defendant") in opposition to the motion of Plaintiff Sovereign Bank ("Sovereign" or "Plaintiff") seeking summary judgment in its favor.

In the instant action, Plaintiff seeks to enforce three limited guaranties executed by Defendant in connection with loans issued by Plaintiff to certain Borrowers, pursuant to three Loan Agreements. The loan transaction consisted of a multitude of interrelated documents and a number of parties, some of which are not parties to the instant action. Plaintiff maintains that the Borrowers and Defendant defaulted under the terms of the Loan Agreements, creating an Event of Default under the terms of the relevant agreements, which Event of Default triggered a provision of the Limited Guaranties requiring NLS to deposit the full amount of its limited guaranty (10% of approximately $89 million) into a Lockbox Account controlled by Sovereign.

However, as set forth in the Declaration of Ron Kincheloe dated December 17, 2010 submitted herewith (the "Kincheloe Decl."), there was <u>no</u> Event of Default under the terms of the Loan Agreements. Indeed, the Borrowers and Defendant fully complied with their obligations under the terms of the Loan Agreements as well as the Limited Guaranties. As there was <u>no</u> default by Defendant or Borrowers, there was no Event of Default which would trigger any obligations under the Limited Guaranties. Thus, contrary to the bold assertion by Plaintiff that "Northern's defaults under the Guaranties are indisputable", they are disputable, and Defendant does dispute them. As set forth below, and in the Kincheloe Decl., Plaintiff's application of the provisions of the Loan Agreements and the Limited Guaranties are simply untenable. Plaintiff fails to identify the numerous provisions of the Loan Agreement that demonstrate that Defendant complied with its obligations. A simple reading of provisions of the Loan Agreements clearly

shows that Defendant complied with its obligations.  Plaintiff is not entitled to summary judgment.

## STATEMENT OF FACTS

The facts pertinent to this motion are set forth in the Kincheloe Decl., which is incorporated by reference herein, and reiterated in part below.[1]

Defendant is a specialized commercial leasing company which specializes in financing credit card Point of Sale (POS) terminals as well as other types of business equipment that sell for under $10,000.  Kincheloe Decl., ¶12.  Defendant finances its operations by entering into financing transactions similar to the ones it entered into with Plaintiff.  In these types of financings, Defendant will sell "pools" of leases it originates to a newly created affiliated special purpose (bankruptcy remote) entity ("SPE").  In this case, those SPEs were the Borrowers.  The special purpose entity then borrows money, as Borrowers did from Plaintiff, secured by the leases it purchased from Defendant.  The SPE uses the proceeds of the loan to pay Defendant for the leases it bought.  Kincheloe Decl. ¶13.  As part of the financing transactions it entered into with Plaintiff, Defendant also provided a limited guaranty, which guaranties payment of up to 10% of the initial principal balance of the loans if certain conditions are met.  In addition to the limited guaranty, Defendant also acts as the Servicer, providing certain servicing functions with respect to the leases securing the loans.  Those include, among other things, causing the monthly lease amounts due from lessees to be collected, paying any taxes due in connection with the lease or property underlying the lease, providing Plaintiff a report of its activities as servicer and, if necessary, bringing actions to collect monies due under defaulted leases.  Kincheloe Decl. ¶14.

---

[1] Capitalized terms are as defined in the Kincheloe Decl. or in the pertinent loan documents.

The primary method by which Defendant causes the collection of the majority of the lease payments due every month is by initiating debits of such amounts through the Automated Clearing House ("ACH") system. This is done by providing an ACH Bank, here First Premier Bank, a list of the names and bank account numbers of, and amounts due from, lessees. Using this information, First Premier initiates debits of such lessees' bank accounts through the ACH system and deposits them into the Lockbox Account. Pursuant to the 2009 Loan Agreements (Section 8.3(a)) and section 4 of the Amended and Restated Deposit Account Control Agreement dated as of September 4, 2009 (the "Lockbox Account Control Agreement" (Exhibit "C"), First Premier is then required to, on a daily basis, wire or "sweep" monies from the Lockbox Account into Plaintiff's Collections Account. Kincheloe Decl.¶14.

Pursuant to sections 8.3(a) and (c) of the Loan Agreements and section 3.1 of the Limited Guarantees, the obligation of the Borrowers and NLS, in connection with the Loans, was to have the requisite funds that were due to Sovereign for each calendar month (the "Due Period") deposited into a Lockbox Account at First Premier, which account was controlled by Sovereign.[2] Kincheloe Decl. ¶16. Pursuant to the Loan Agreements (§8.3(a)) and the Lockbox Account Agreement (4(a)), as noted above, First Premier was to sweep the monies that were in the Lockbox Account to the Sovereign Collection Account on a daily basis. Kincheloe Decl ¶¶18-19. The Lockbox Account was under the total control of Sovereign, which was also responsible for causing the funds in the Lockbox Account to be swept into the Sovereign Collection Account (8.3(c) of the Loan Agreement).

---

[2] The bulk of the funds received into the Lockbox Account were received via the ACH system effectuated by First Premier. Kincheloe Decl.¶16.

NLS had no rights to exercise any control over the Lockbox Account, and had neither the power nor the obligation to sweep funds from the Lockbox Account into the Sovereign Collection Account, or to direct First Premier to do so. Kincheloe Decl. ¶20

The Loan Agreements required NLS to report to Sovereign, on a monthly basis the funds that were available in the Lockbox Account on each Determination Date.  Kincheloe Decl. ¶23.  The report was called a Servicer Report, which consisted of:

> a report of all collections made with respect of the Contracts in the prior Due Period, any payments by Servicer under the Servicer Guaranty and any other deposits to the Lockbox Account and any proposed withdrawals for (i) Taxes, (ii) payments to Lender, and if less than the Required Payment, the amount of Payment Deficiency, (iii) Servicing Charge and (iv) any other permitted payment.  ¶23.

Each month, Sovereign received from NLS the requisite Servicer Report.

For each month relevant to the instant motion, the Servicer Reports (Exhibits "D" – "I") to the Kincheloe Decl., reveals that at the end of every calendar month, that is, at the end of each Due Period relevant to this action, there was a balance in the Lockbox Account which, when added to the amounts that had already, concededly, been wired from the Lockbox Account to the Sovereign Collection Account, totaled an amount sufficient to cover the payment that was due to Sovereign under the Loan Agreements for each relevant Due Period. Kincheloe Decl. ¶¶24-30, 43.

Accordingly, on the Determination Date, Defendants properly determined that there was no Payment Deficiency due to Sovereign.  A Payment Deficiency is defined in section 3.1 of the Limited Guaranty as:

> If on any Determination Date, the funds **available** for payment to Lender **in the Lockbox Account** are less than the amounts required to be paid under Section 8.3(c)(ii) of the Loan Agreement [the Amortization Schedule], [NLS] shall, on such Determination Date, without notice from Lender, deposit into the Lockbox

>Account, the amount of such deficiency (the "Payment Deficiency"). ¶31.

The Servicer Reports clearly indicate that there was always enough money available for payment to Sovereign in the Lockbox Account on the relevant Determination Dates.  As such, the Payment Deficiencies upon which Plaintiff has premised this suit never existed and the Limited Guaranty was never triggered.

In its Complaint and the instant motion, Plaintiff relies upon section 8.3(d) of the Loan Agreements (without consideration of any other relevant sections of the relevant agreements) to conclude that Payment Deficiencies did exist, and thus, the Limited Guaranties were triggered.  In so doing, Plaintiff apparently gives credit against payment due to it only for funds that were wired into the Sovereign Collection Account from the Lockbox Account during the Due Period rather than also crediting funds that were available in the Lockbox Account during the Due Period as reported on and available on the Determination Date.  Sovereign completely ignores the language and import of Section 3.1 of the Limited Guarantees, but also the language of numerous other Sections of the Loan Agreements that define Payment Date as 15 days after the end of the Due Period, including §§ 2.3(c), 8.3(a), 8.3(c) and 8.13 of the Loan Agreements.  Each of these sections refers and relies upon the concept of the Payment Date as defined in the Loan Agreements, that is, 15 days <u>after</u> the Due Period.  Yet Plaintiff's application of section 8.3(d), and its position that only money received in its collection account <u>during the Due Period</u> effectively negates the concept of Payment Date as defined in the Loan Agreements.

In sum, the Servicer Report for each month showed, among other things, the total of the monies that were deposited into the Lockbox Account by NLS in accordance with the Loan Agreements in each Due Period.  The Servicer Report that was prepared and provided to Sovereign on each Determination Date consistently showed that there were funds available in the

Lockbox Account that were sufficient to meet the Required Payment amount: the monies that were already wired out of the Lockbox Account into Sovereign's account *plus* the amounts that were still in the account at the last day of the month (*plus*, if necessary as in May 2010, available reserves) equaled an amount greater than the amount due for that month under the Amortization Schedule. Thus, at the Determination Dates, there were no Payment Deficiencies, and no deficiency payment was due. Inasmuch as there was no payment due, there was no Event of Default. In the absence of the Event of Default, Section 8 of the Guaranty is not implicated and Plaintiff is not entitled to judgment under the Guaranty.

As discussed below, Plaintiff's motion should be denied in its entirety.

## ARGUMENT

### I.

### PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

**A.      The Standards For Granting Summary Judgment**

To prevail on its motion for summary judgment, Sovereign must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Maxim Group LLC v. Life Partners Holdings, LLC, Inc.*, 690 F.Supp.2d 293, 298-299 (S.D.N.Y. 2010) (summary judgment only appropriate if "the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the party is] entitled to judgment as a matter of law.")  Moreover, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Diesel Props. S.R.L. v. Greystone Business Credit II* LLC, No. 07 Civ. 9580, 2009 WL 89115 (S.D.N.Y. Jan. 14, 2009); *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 7 (2d Cir. 1983).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (U. S. 1986) (quoting Fed. R. Civ. P. 56(c)); *see also Maxim Group LLC*, F.Supp.2d 293 at 298-299.  Where the movant "fails to fulfill its initial burden" of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, "'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140-41 (2d Cir. 2003).

B.     **Material Questions of Fact Exist Precluding the Grant of Summary Judgment**

Plaintiff's motion for summary judgment should be denied because there exist genuine issues of fact.  Initially, in support of its motion, Plaintiff sets forth the elements of a breach of contract claim, that is, (a) the existence of a contract, (b) performance by Plaintiff, (c) failure to perform by Defendant, and (d) damages.  Plaintiff asserts that since it has established all those elements, summary judgment is appropriate.  However, as set forth in the Kincheloe Decl., there are triable issues of fact as to at least two of those elements:  (1) whether Plaintiff performed under the relevant agreements, and (2) whether Defendant failed to perform.  Defendant maintains that it has in fact fully performed all its obligations under the terms of the Loan Agreements as well as the Limited Guaranty.  In contrast, <u>Plaintiff</u> has <u>not</u> performed as required under the Loan Agreements and the Lockbox Account Agreement, as it failed to sweep, or cause to be swept, into its own Collection Account, funds that were made available by Defendant in the Lockbox Account.  For this reason alone, and as discussed at greater length below, Plaintiff's motion must be denied.

Furthermore, it is well-settled that for purposes of breach of contract actions, the Court should grant summary judgment only when the contract's terms are clear and not conducive to more than one reasonable interpretation. *Mellon Bank, N.A. v. United Bank Corporation of New York*, 31 F.3d 113, 115 (2d Cir. 1994) (citations omitted) (language constituting "Event of Default" in loan agreement was reasonably susceptible of more than one interpretation, precluding summary judgment). Summary judgment is generally proper in a contract dispute only if the language of the contract is "wholly unambiguous" read within the context of the entire agreement. *Id.*, citing *Sayers v. Rochester Telephone Corporation Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (the task of the Court is to determine whether contractual language is ambiguous "read in the context of the entire agreement" to "safeguard against adopting an interpretation that would render any individual provision superfluous.") (internal citations omitted). Since the purpose of contract interpretation is to give effect to the expressed intent of the parties, where the parties' intent cannot be conclusively determined as a matter of law from the terms of the agreement at issue, "a factual question arises that must be resolved by a jury." *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989). Thus, summary judgment is not appropriate when the language of an agreement points towards one particular outcome, and language in another section of the agreement requires a different outcome. *L.K. Comstock & Co., Inc. v. Perini Corp.*, 903 F.Supp. 609, 611 (S.D.N.Y. 1995).

At the very least, the Kincheloe Decl. and the documents annexed thereto have demonstrated that the language in the Loan Agreements and the Limited Guaranties is at best ambiguous, if not contradictory, and is possibly susceptible of multiple, reasonable interpretations. *Olaes Enterprises, Inc. v. A.D. Sutton & Sons, Inc.*, No. 09 Civ. 8680, 2010 WL 3260064 at *3 (S.D.N.Y., Aug. 6, 2010) (motion for summary judgment denied because

summary judgment is only appropriate in a breach of contract action where the language of the contract is unambiguous, and "reasonable persons could not differ as to its meaning.") (citations omitted).

The provision of the Loan Agreements upon which Plaintiff apparently relies (§8.3(d)) is contradicted by the Sections of the Loan Agreements upon which Defendant has relied in determining that there was no Payment Deficiency at the Determination Date, and thus no need to make a deficiency payment, including section 3.1 of the Limited Guaranty and section 8.3(c) of the Loan Agreements.  Accordingly, there was no Event of Default, and no trigger of the Limited Guaranty provision that Plaintiff seeks to enforce.  To the extent that both Plaintiff's and Defendant's interpretations could be considered reasonable, however, the law is well settled that, where more than one reasonable application of the contract exists, summary judgment must be denied. *See, Mellon Bank, N.A.*, 31 F.3d at 115.

As discussed in the Kincheloe Decl., not only are the provisions of Section 8.3(d) of the Loan Agreements (the sole section upon which Plaintiff relies) contradictory to the provisions of Section 8.3(c) of the Loan Agreements and 3.1 of the Limited Guaranties, Plaintiff's interpretation and application of Section 8.3(d) would effectively negate the provisions of the relevant agreements that utilize and rely upon the concept of a Payment Date as defined in the Loan Agreements (that is, the 15th day of the month following any give Due Period), including Sections 2.3(c), 6.1, 8.3(c) and 8.13 of the Loan Agreements, and Section 3.1 of the Limited Guaranty.

Acceptance of Plaintiff's construction of the contract would thus violate the basic principle that courts are not to construe contract provisions as nullities, but rather are to give them meaning, if possible. "In construing a contract, one of a court's goals is to avoid an

interpretation that would leave contractual clauses meaningless." *Cacace v. Meyer Marketing (Macau Commercial Offshore Co., Ltd.)*, 589 F.Supp.2d 314, 323 (S.D.N.Y. 2008); *Two Guys from Harrison-N.Y. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 403, 482 N.Y.S.2d 465, 468 (1984). Plaintiff's theory, that Northern is in default because there were insufficient funds collected in the Sovereign Collection Account during Due Period (i.e. the end of the month), rather than at the Payment Date, as required by other Sections of the Loan Agreements, would render the plain and simple language, and concept, of the Payment Date, as defined in the Loan Agreements, virtually meaningless.

Furthermore, it is well-settled that a party seeking to hold another in breach of a contract cannot sue on the non-performance of a condition when the non-performance has been caused by the party itself. *See, e.g., In re Bankers Trust Co.*, 450 F.3d 121 (2d Cir. 2006); *Bank of New York v. TYCO International Group, S.A.*, 545 F.Supp.2d 312, 324 (S.D.N.Y. 2008); *Gross v. Neuman*, 53 A.D.2d 2 (1st Dep't 1976). Similarly, in every contract, there is an implied covenant of good faith, fair dealing and cooperation… "The general rule is, as it has been frequently stated, that a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition.(citation omitted)" *Gross v. Neuman*, 53 A.D.2d at 5.

In this case, Sovereign had complete control over the Lockbox Account, and over First Premier in connection with the sweeping of the funds from the Lockbox Account into the Sovereign Collection Account, in accordance with both the Lockbox Control Agreement and the Loan Agreement. Defendant's obligation was only to ensure that adequate funds were deposited into the Lockbox Account. It did not have the power or obligation to sweep those funds into the Sovereign Collection Account. As demonstrated in the Kincheloe Decl., there were sufficient

funds available in the Lockbox Account at the end of the Due Period to satisfy the full amount of the Required Payments. The funds were available to be swept into the Sovereign Collection Account. It was within Sovereign's power and control to sweep those funds into the Collection Account, or to cause them to be swept into the Collection Account. If it did not do so, it cannot hold NLS responsible for that failure, and then declare an Event of Default, thus triggering the Limited Guaranty. Sovereign's failure to act itself, by sweeping the funds that were in the Lockbox Account into its Collection Account, constituted a breach by Sovereign of both the Loan Agreements and the Lockbox Control Agreement. Had Sovereign acted in accordance with the agreements and swept the funds, there would have been no basis for it to declare an Event of Default. Plaintiff's own breach, which also violated the implied covenant of good faith and fair dealing, resulted in the alleged Event of Default, not any breach on the part of Defendant.

For all the foregoing reasons, it is respectfully submitted that Plaintiff's motion for summary judgment must be denied.

## II.

### SUMMARY JUDGMENT SHOULD BE DENIED IN THE ABSENCE OF DISCOVERY

It is well established that granting a party summary judgment prior to discovery is generally improper and disfavored because the party opposing the motion has not had the opportunity to discover the information essential to support its position. *Union Bank, N.A. v. CBS Corp.*, No. 08 Civ. 08362, 2009 WL 1675087 (S.D.N.Y. June 10, 2009) (motion for partial judgment in breach of contract case for defendant's alleged failure to repay Bank for advance of funds denied). As *Union Bank, N.A.*, explains:

> [o]nly in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery. (citation omitted) This is not one of those cases…[a] party opposing a motion for summary judgment must

> have had the opportunity to discover information that is essential to its opposition to the motion. (citation omitted) Whether or not the discovery CBS takes will undermine the Bank's arguments concerning the applicability of the cited language from the agreements is not clear, but CBS is entitled to such an opportunity.
> *Id.* at *4-*5 (internal quotations omitted)

*See also Shelton v. The Trustees of Columbia University*, No. 04 Civ. 6714, 2004 WL 2979781 (S.D.N.Y. Dec. 17, 2004) (Hellerstein, J.) (where breach of contract claim depends on factual allegations that are in dispute, summary judgment is inappropriate before defendant has time to answer and conduct discovery); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303-04 (2d Cir. 2003). This Court has recognized that "as a safeguard against a premature grant of summary judgment, the nonmoving party must first be afforded the opportunity to conduct discovery of the information essential to its opposition." *In re Enron Corp.*, 2005 WL 3873891, at *2 (Bankr. S.D.N.Y. July 29, 2005).

Indeed, the Second Circuit has held, in finding a lower court's grant of summary judgment premature: "'[t]he nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.'" *Miller v. Wolpoff & Abramson, L.L.P.*, at 304 (citation omitted); *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000) (only in the rarest of cases may summary judgment be granted against a party who has not had the opportunity to conduct discovery), citing *Sutera v. Schering Corp.*, 73 F. 3d 13, 18 (2d Cir. 1995) (grant of summary judgment reversed because "summary judgment was entered before any discovery had taken place")**;** *Johnson v. Arista Holding, Inc.*, 2006 WL 3511894, No. 05 Civ. 9645 at *4 (S.D.N.Y., Dec. 5, 2006) ("The purpose of summary judgment is to promptly dispose of cases where the record shows that there is no genuine issue of fact, not to prematurely decide cases on an incomplete

record); *Berger v. U.S.*, 87 F.3d 60, 65 (2d Cir. 1996) ("The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment…[T]here has been no discovery as yet in this action. Thus, we cannot conclude that the parties had already had a fully adequate opportunity for discovery when the district court granted summary judgment.") (internal citations and quotes omitted).

Although Defendant believes that it has presented sufficient evidence to this Court to warrant the denial of summary judgment, if the Court does not agree, it is respectfully submitted that NLS should be allowed reasonable discovery, pursuant to FRCP 56(f), before this motion is decided. There has been absolutely no discovery in this action. Plaintiff made the motion on November 1, 2010, just five (5) weeks after the answer was served, and four (4) days prior to the originally scheduled Case Management Conference with the Court. The conference was twice adjourned, and was finally held on November 19, 2010. Although a Case Management Plan was presented to the Court, a scheduling order was not signed. Thus, <u>no discovery</u> has been conducted.

The Defendant respectfully submits the Kincheloe Decl. as Defendant's affidavit pursuant to Rule 56(f). The Kincheloe Decl. sets forth the areas of discovery that would shed light on the issues in this action that will demonstrate that there are material questions of fact mandating against the granting of summary judgment, in the event that the Court determines that the current opposition to the motion for summary judgment is not sufficient to defeat the motion. Included within these areas would be the following:

The basis upon which Sovereign determined that there was an Event of Default and documents relied on by Sovereign in determining that there was an Event of Default.

    a.   The basis upon which Sovereign determined that there was an Event of Default

and documents relied on by Sovereign in determining that there was an Event of Default.

b. How Sovereign expected payments to be made under the 2009 Loan Agreement, and the Amended and Restated 2008 and 2007 Loan Agreements, and the Limited Guaranties.

c. Plaintiff's understanding of what receivables Sovereign expected to be credited towards payment of the Required Payment and when would they have to be in the Sovereign Collection Account.

d. The manner in which the sweeps of funds from the Lockbox Account to the Sovereign Collection Account was conducted.

e. Sovereign's control over the Lockbox Account, including communications between Sovereign and First Premier regarding how funds were swept from the Lockbox to the Sovereign Collection Account, and the extent and manner of control Sovereign exerted over the Lockbox Account and First Premier.

f. The relevance and impact of the Payment Date and the Determination Date, as defined in the Loan Agreements, and how those worked in connection with the other mechanics of the loan documents.

g. The manner in which Sovereign calculated the alleged Payment Deficiencies, including the basis for its determination that there was an Event of Default and the information and documentation which it utilized and upon which it relied.

h. Plaintiff's requirement of daily sweeps by First Premier and the understanding and intention of Sovereign with respect to the relevance of the Payment Date as it relates to the daily sweep concept.

      i. The understanding and intention of Sovereign with respect to section 8.3(d) of the Loan Agreements.

The understanding and intention of Sovereign with respect to the relevance of the definitions of Payment Date and Determination Date in the Loan Agreements, and how Plaintiff rationalizes Section 8.3(d) in the face of those definitions. Each of these matters would be in the sole knowledge of Sovereign and/or First Premier, and go directly to the issues in this matter as discussed at depth in the Kincheloe Decl. and herein. Notably, while Plaintiff attaches copies of the contracts that it claims were breached, it does not provide any documents to show that Defendant was in default, or how it determined that it was in default. Thus, as is evident from our opposition, we are left to guess, to a certain degree, the basis for the determination that Defendant defaulted.

In view of the foregoing, and the well established hesitance of the Court to grant summary judgment in the absence of discovery, it is requested that Defendant be permitted to obtain documents from, and conduct depositions of, Plaintiff, prior to the granting, if the Court is so inclined, of Plaintiff's motion for summary judgment.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment should be denied in its entirety. In the alternative, it is requested that the Court permit Defendant conduct discovery in order to enable it to adequately oppose Plaintiff's motion.

Dated: New York, New York
December 17, 2010

      Respectfully submitted,

      MOSES & SINGER LLP

      By: /s/ Ruth C. Haber
           Ruth C. Haber (RH-0406)
           The Chrysler Building
      405 Lexington Avenue
      New York, NY 10174-1299
      (212) 554-7800

      Attorneys for Defendant