UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOVEREIGN BANK,

                Plaintiff,

-against-

NORTHERN LEASING SYSTEMS, INC.,

                Defendant.

Case No. 1:10-cv-5530-AKH

## DEFENDANT'S COUNTER-STATEMENT UNDER RULE 56.1(b)

Defendant, NORTHERN LEASING SYSTEMS, INC. ("Defendant" or "NLS"), submits the following counter-statement of material facts, notwithstanding the lack of discovery in this matter, and without prejudice to the claim that the motion is premature:

### The Loan Agreements And Guaranties

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Denied. The total outstanding principal of the loans as of 10/31/2010, is $31,588,825. Kincheloe Decl. ¶2.

6. Admitted.

### Northern's Payment Obligations

7. Admitted.

8. Admitted to the extent of identifying the Funding Sources and the Court is referred to the agreements for the specific terms and requirements thereof (Kendall Decl. Ex. 1-3), except aver that pursuant to Section 8.3(a) of the Loan

Agreements (Kendall Decl. Ex. 1-3) and Section 4 of the Amended and Restated Deposit Account Control Agreement dated as of September 4, 2009 the sweeps were to be done on a daily basis, and not "periodically" wired. (Kincheloe Decl. Exhibit "C").

        9.     Denies that the amounts due under the Loan Agreements must be received by Sovereign by the Determination Date and respectfully refers the Court to the agreements for the specific terms and requirements thereof. Pursuant to section 3.1 of the Guarantees, on the Determination Date there must be funds available in the Lockbox Account for payment to Lender on the Payment Date. Kendall Decl. Ex. 12-14, §3.1.

### Events of Default Under the Loan Documents and Northern's Failure to Remit the Payment Deficiencies

        10.     Denies the allegations, except admits the total scheduled amounts due for each month on June 15, July 15, August 15, September 15 and October 15, 2010. As to the Total Amount Received by Sovereign, Defendant admits that Sovereign received in the Lockbox Accounts and had available in the Lockbox Accounts amounts in excess of those amounts. (Kincheloe Exhibits "D" – "I").

        11.     Admits the language of section 6.1 of the Loan Agreements, but denies that there were any Payment Defaults or any Events of Default under the Loan Agreements and Guaranties, and as such, denies that any payment defaults remain unremedied.

        12.     Admits that on or about June 18, 2010, Sovereign sent a letter to Northern stating that the guaranty amount was due and demanding that Northern deposit into the Lockbox Account not less than $8,690,527.94. Northern admits that it did not deposit that amount into the Lockbox Account or otherwise remit same to Sovereign because it was not obligated to do so, inasmuch as Defendant was not in default under the

Loan Agreements and Limited Guaranties and Sovereign improperly declared an Event of Default.

### Defendant's Statement Of Additional Material Facts That Create A Genuine Issue To Be Tried

13.     Section 4(a) of the Lockbox Account Control Agreement requires that First Premier "shall sweep, on each business day that [it] is open for business" into the Sovereign Collection Account the funds that are in the Lockbox Account. (Kincheloe Decl. Exhibit C)

14      Section 8.3(a) of the 2007 and 2008 Amended and Restated Loan Agreements, and the 2009 Loan Agreement (Kendall Decl. Exhibits 1, 2 and 3) provides, in relevant part, as follows:

> Servicer and Borrower agree that, except as otherwise described herein, amounts payable under the Contracts…shall be automatically debited from each Obligor's account through the ACH system and credited to the lockbox Account in the name of Servicer at Lockbox Bank…
>
> For all purposes, the Lockbox Account shall be under the total control of [Sovereign] and [Sovereign] may move funds out of the Lockbox Account in [Sovereign's] sole discretion. The parties agree that [First Premier] shall on a daily basis sweep all collected and available funds and amounts on deposit in the Lockbox Account (subject to the maintenance of any minimum balance required by [First Premier] for ACH returns and other charge backs) into an account at Sovereign Bank under [Sovereign's] sole dominion and control as set forth in the Lockbox Account Control Agreement. Neither Borrower nor [Defendant] shall have any rights to withdraw funds from, or otherwise exercise any control over the Lockbox Account or provide any instruction to [First Premier] with respect to the Lockbox Account…"

15.     Section 3.1 of the Limited Guaranty (Kendall Decl. Exhibits 12, 13 and 14), provides

> Pursuant to the Loan Agreement, **Borrower is required, on each**

> **Payment Date, to make payment on the Loan to Lender in accordance with the Amortization Schedule from the Contract Receivables and other proceeds of the Collateral collected by Guarantor, as Servicer of the Contracts, and deposited into the Lockbox Account. If on any Determination Date, the funds *available* for payment to Lender in the Lockbox Account** are less than the amounts required to be paid under Section 8.3(c)(ii) of the Loan Agreement, Guarantor [NLS] shall, on such Determination Date, without notice from Lender, deposit into the Lockbox Account, the amount of such deficiency (the "Payment Deficiency"); provided, that, Guarantor shall not be obligated to fund Payment Deficiencies in excess of an aggregate amount equal to the Maximum Payment Amount.
> (emphasis added, underline in original)

16. Sovereign and Northern Leasing failed to comply with their contractual obligations to sweep the funds as set forth above.

17. Section 8.3(c) of the Loan Agreement states as follows:

> No later than noon Central time on the Payment Date of each calendar month, or if such day is not a business Day, the next succeeding Business Day, Lender shall cause the following transfers and disbursements to be made from amounts received in the relevant Due Period directly from the Lockbox Account and amounts received from Servicer in the form of the Square-up Payment in the following order of priority, in accordance with the information provided to Lender by Servicer in relevant Monthly Servicer Report, on the Determination Date for the relevant Due Period:
> (i) first…to Servicer, with respect to any portion of a payment made by Servicer on behalf of an Obligor in respect of Taxes to the appropriate taxing jurisdiction when due and payable;
> (ii) second, to Lender, the Required Payment plus any out-of-pocket costs and expenses actually incurred by the Lender;
> (iii) third… servicing charges;
> (iv) fourth, to Lender, any Excess Funds; and
> (v) fifth after all Obligations… to Lender have been satisfied in full, to Borrower, the remainder.
> (Kendall Decl. Exhibits 1, 2 and 3)

18. The obligation of the Borrowers and NLS in connection with the Loans was to have the requisite funds that were due to Sovereign each calendar month

853322v1  011082.0125                                4

deposited into the Lockbox Account at First Premier Bank ("First Premier"). On or before the Payment Date, defined in the Loan Documents as the 15th day of the month (that is, 15 days after the end of the Due Period), or, if not a business day, the next business day, Sovereign was to cause to be made the transfer of funds that were collected in the Lockbox Account during the relevant Due Period to its Collection Account (Loan Agreement, §§ 2.3(c), 8.3(c); Kendall Decl. Exhibits 1, 2 and 3).

19.  There were sufficient funds in the Lockbox Account during each relevant Due Period so that on each Determination Date, the funds available for payment to Lender in the Lockbox Account were not less than the amounts required to be paid under Section 8.3(c)(ii) of the Loan Agreement. At each Determination Date, the balance in the Lockbox Account, plus the amounts that Plaintiff concedes were wired to it during the Due Periods, were *not* less than the amounts required to be paid to Sovereign. Thus, there were no Payment Deficiencies, no deficiency payments due for any of the months that Sovereign claims that Defendant is in default, there were no Events of Default, and there was no basis to trigger the Limited Guaranties under which Plaintiff has sued. (Kincheloe Decl. Exhibits "D" – "I"}.

Dated: New York, New York
December 17, 2010

>Yours, etc.,
>
>MOSES & SINGER LLP
>*Attorneys for Defendant*
>
>By:  /s/ Ruth C. Haber
>   Ruth C. Haber, Esq.
>   The Chrysler Building
>   405 Lexington Avenue
>   New York, New York 10174-1299
>   (212) 554-7800