UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOVEREIGN BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:10-CV-05530 (AKH) |
| | ) |
| NORTHERN LEASING SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
SOVEREIGN BANK'S MOTION FOR SUMMARY JUDGMENT**

Dated: February 25, 2011

Louis T. DeLucia
Carl W. Oberdier
Alyson M. Fiedler
SCHIFF HARDIN LLP
900 Third Avenue
New York, New York 10022
Telephone: (212) 753-5000
Facsimile: (212) 753-5044

## **TABLE OF CONTENTS**

Argument .................................................................................................................................. 1

A.   Northern Has Failed to Raise Any Genuine Issue of Material Fact .................................. 1

   1.   Northern's Own Servicing Reports Dispositively Show Uncured Deficiencies ............ 1

   2.   The Precise Amount of the Deficiencies is Immaterial ..................................................... 4

   3.   Northern's Calculated Payment Deficiencies Give Full Credit for Amounts Withheld by First Premier..................................................................................................... 5

   4.   Mr. Kincheloe Fails To Account For Northern's Payment Of Taxes And Other Deductions From Lockbox Collections ........................................................................ 7

B.   Northern Is Not Entitled To Discovery............................................................................... 8

CONCLUSION.............................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**

*AAI Recoveries v. Pijuan*, 13 F.Supp.2d 448 (S.D.N.Y. 1998) ...................................................... 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................... 5

*Berger v. U.S.*, 87 F.3d 60 (2d Cir. 1996) ......................................................................................... 13

*Caslterigg Master Investments, Ltd. v. Charys Holding Co., Inc.*,
    2008 WL 449690 (S.D.N.Y. Feb. 19, 2008) ............................................................................ 4,10

*Continental Airlines, Inc. v. Lelakis*, 943 F.Supp. 300 (S.D.N.Y. 1996) ...................................... 11

*Enron Corp. v. J.P. Morgan Securities, Inc. (In re Enron Corp.)*,
    2005 WL 3873891 (Bankr. S.D.N.Y. July 29, 2005) ................................................................ 12

*Forum Ins. Co. v. Swink*, 1997 WL 773715 (S.D.N.Y. Dec. 11, 1997) ......................................... 11

*Gateway, Inc. v. Vitech Am., Inc.*, 143 F.Supp.2d 391 (S.D.N.Y. 2001) ......................................... 8

*Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000) ..................................... 12

*Johnson v. Arista Holding, Inc.*, 2006 WL 3511894 (Dec. 5, 2006 S.D.N.Y) .............................. 12

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) ........................................... 12

*MM Arizona Holdings LLC v. Bonanno*, 658 F.Supp.2d 589 (S.D.N.Y. 2009) ........................... 10

*Novick v. AXA Network, LLC*, 2009 WL 2753291 (S.D.N.Y. Aug. 27, 2009) ............................... 9

*Pereira v. Cogan*, 267 B.R. 500 (S.D.N.Y. 2001) ............................................................... 5, 9, 10

*Shelton v. The Trustees of Columbia University*,
    2004 WL 2979781 (S.D.N.Y. Dec. 17, 2004) ........................................................................... 11

*Skandinaviska Enskilda Banken v. Rathaus*, 624 F.Supp. 207 (S.D.N.Y. 1985) .......................... 11

*Sterling Fin. Services Co., Inc. v. Franklin*, 259 Fed.Appx. 367 WL 60291 (2d Cir. 2008) .......... 9

*Tennenbaum Capital Partners LLC v. Kennedy*,
    2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009) ............................................................................ 9

*UBS AG v. Healthsouth Corp.*, 645 F.Supp.2d 135 (S.D.N.Y. 2008) ............................................. 9

*Union Bank, N.A. v. CBS Corp.*, 2009 WL 75087 (S.D.N.Y. June 10, 2000) ............................... 11

*Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F.Supp.2d 448 (S.D.N.Y. 2003) ........................... 10

*Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*,
   247 F.Supp.2d 352 (S.D.N.Y. 2002 ....................................................................................... 10

## Rules

Fed. R. Civ. P. 56. .......................................................................................................... 1, 11

Plaintiff Sovereign Bank ("**Sovereign**") respectfully submits this reply memorandum of law in further support of its motion for an order granting it summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

## ARGUMENT

### A. Northern Has Failed to Raise Any Genuine Issue of Material Fact

#### 1. Northern's Own Servicing Reports Dispositively Show Uncured Deficiencies

This is a simple case of a clear default under an unconditional Guaranty of promissory notes, of which this Court has seen many times before.  Under the Loan Documents, Sovereign is owed a certain undisputed amount every month (the "Required Payment").  Northern is required to ensure each month that the full amount of the Required Payment, plus additional amounts necessary to enable Northern to pay any taxes, insurance, or other expenses, is deposited into a bank account maintained at First Premier Bank (the "Lockbox Account").  If the amounts deposited in the Lockbox Account during the calendar month are insufficient, Northern is required to make up the difference itself, such that the entire Required Payment is made to Sovereign by the fifteenth day of the next month.  Otherwise, there is a Payment Deficiency, which, if uncured, constitutes an Event of Default under the Loan Agreements and Guaranties. *See* Kendall Dec. ¶¶ 9-11, 13.  Although Northern has attempted to leverage immaterial differences in the parties' interpretations of the Loan Documents into issues of fact, the foregoing statements of Northern's obligations are ones that Northern itself repeatedly concedes. *See* Declaration of Ron Kincheloe ("Kincheloe Dec.") ¶¶ 3, 16, 20, 22, 28.

---

[1] Except as otherwise defined herein, capitalized terms shall be defined as in the Memorandum Of Law In Support Of Plaintiff Sovereign Bank's Motion for Summary Judgment ("Pl. Mem.") and the Declaration of William Kendall ("Kendall Dec.").

As the Court can appreciate, no advanced degree in mathematics or finance is required to ascertain whether the total amount deposited monthly into a single bank account is equal to an agreed-upon payment amount.  The Court's task is further simplified by the fact that ***Northern's own Servicing Reports clearly admit the Payment Deficiencies***.  *See* Declaration of Sondra M. Schwartz ("Schwartz Dec.") ¶¶ 6-10 & Exs. A, B; Declaration of Ron Kincheloe ("Kincheloe Dec.") Exs. D-I.  In its capacity as Servicer, Northern – not Sovereign – is exclusively responsible for managing, reconciling and reporting on the amounts collected and paid to Sovereign.  *See* Kendall Dec. ¶ 4  & Exs. 1-3 Arts. 8.1 (detailing certain of Northern's account management responsibilities), 8.6 (detailing Northern's reporting obligations).  The conclusive evidence of default in this case thus comes, not from Sovereign's records, but from Northern's.

Northern's monthly Servicing Reports state plainly on their face that there have been Payment Deficiencies for every month since June 2010 – exactly as Sovereign claims.  *See* Kincheloe Dec. Exs. D-H; Schwartz Dec. ¶¶ 6-10 & Exs. A, B.  That is, total monthly collections in the Lockbox Account, plus other lessee receipts paid directly to Northern (after Northern's deductions for taxes and other adjustments), plus any available reserves, have been substantially less than the Required Payments for each of the last nine months.  Because of the confusion that Mr. Kincheloe's Declaration attempts to create, it is worth making this point crystal clear.  Let us therefore examine for illustrative purposes Northern's June 2010 Report (Kincheloe Dec. Ex. D) – the first month in which a Payment Deficiency occurred.  As that Report states:

- The monthly Required Payment to Sovereign was $2,222,160.47 (*see* page 2, "Reserve Balances, Loan Payments").

- The total "Payments Collected" that Northern credited toward the Required Payment was $1,885,092.99 (*see* "Reserve Balances; Payments Collected").

- Northern also credited the entire remaining reserve account balance of $209,851.53 to the Required Payment (*see* "Reserve Account; Beginning Balance").

2

- Northern applied a small negative adjustment to these credits of $8,136.06 (*see* "Reserve Balances; Adj for Ins. Diff. & LPR Adj.).

- ***The result was a negative ending reserve balance (*i.e.*, a Payment Deficiency) of $135,351.02 (see Reserve Balances; Ending Balance).***

Northern's subsequent monthly Reports show that these Payment Deficiencies increased substantially in every ensuing month, topping $2.86 million in November 2010. *See* Schwartz Dec. ¶¶ 6-10; Kincheloe Dec. Exs. D-I. The following chart shows the Payment Deficiencies calculated by Northern through November 2010.

| Northern Servicing Report | Kincheloe Dec. Exhibit | Deficiency Calculated by Northern |
|---|---|---|
| June 2010 | D | ($    135,351.02) |
| July 2010 | E | ($    875,643.48) |
| August 2010 | F | ($1,359,485.95) |
| September 2010 | G | ($1,897,953.01) |
| October 2010 | H | ($2,323,017.25) |
| November 2010 | I | ($2,862,912.73) |

Since November 2010, the situation has only deteriorated. Northern's most recent reports provided to Sovereign, from January and February 2011, show that the Payment Deficiencies are now nearly $4 million. *See* Schwartz Dec. ¶¶ 9-10 & Exs. A, B.

Yet, Northern attempts to use smoke and mirrors to make these indisputable Payment Deficiencies disappear – a contrivance that contradicts its own Servicing Reports and does not remotely create a genuine issue of fact. Rather, as Judge Lynch noted in a similar case, a borrower's effort to defeat pre-discovery summary judgment by disputing the lender's debt calculations is unavailing, since such arguments only require the Court to interpret the parties' agreements and perform "basic mathematical calculations," both of which are matters of law. *Caslterigg Master Investments, Ltd. v. Charys Holding Co., Inc.*, 2008 WL 449690 (S.D.N.Y. Feb. 19, 2008). In light of the Payment Deficiencies shown in its own Servicing Reports, Northern simply cannot show a genuine dispute as the existence of such Deficiencies.

3

2. *The Precise Amount of the Deficiencies is Immaterial*

Northern's opposition is directly primarily to quibbling over Sovereign's method of calculating the Payment Deficiencies. This methodological dispute arises from the fact that, since May 2010, the Lockbox Account bank, First Premier, has increased the amounts it temporarily withholds every month in the Lockbox Account before sweeping them into Sovereign's Collection Account.[2] Whereas Sovereign's position is that only the amounts actually swept from the Lockbox Account count toward that month's Required Payment, Northern claims that any amounts withheld by First Premier in the Lockbox Account also count. *See* Kincheloe Dec. ¶¶ 4-6, 24-44. This dispute leads to a monthly difference of a few hundred thousand dollars in calculating the Payment Deficiencies, as the following chart shows.

| Payment Date | Cumulative Deficiency (Sovereign's Calculation – Kendall Dec. ¶ 12)[3] | Cumulative Deficiency (Northern's Calculation – Kincheloe Dec. Exs. D-H) |
|---|---|---|
| June 15, 2010 | ($ 915,075.26) | ($ 135,351.02) |
| July 15, 2010 | ($1,325,426.14) | ($ 875,643.48) |
| August 15, 2010 | ($1,759,696.54) | ($1,359,485.95) |
| September 15, 2010 | ($2,266,988.28) | ($1,897,953.01) |
| October 15, 2010 | ($2,714,724.16) | ($2,323,017.25) |
| November 15, 2010 | (not calculated) | ($2,862,912.73) |

Were the amounts of the Payment Deficiencies material, then Northern might have identified a genuinely-disputed material fact. But the amounts are not material – Sovereign is not seeking in this lawsuit the amounts of the Payment Deficiencies. Rather, upon *any* uncured Payment Deficiency of *any* amount, Sovereign is entitled to claim from Northern the full balance

---

[2] Beginning in May 2010, First Premier began increasing these withheld amounts to cover itself against increasing amounts of bad wires from Northern's lessees. First Premier insisted on increasing these withholdings after it incurred a substantial overdraft in the Lockbox Account because of these bad wires. Schwartz Dec. ¶ 12.

[3] Although Mr. Kendall stated in paragraph 12 of his Declaration the cumulative Payment Deficiency of $2,714,724.16 as of October 2010, the monthly Deficiencies in his chart in that paragraph are non-cumulative. Adding each prior month's Deficiency to the current month's Deficiency yields the cumulative Deficiencies in this chart. *See* Schwartz Dec. ¶ 7 n.2.

4

of its $8.9 million Guaranty. *See* Kendall Dec. ¶ 13-14 & Exs. 1-3 (Loan Agreements) Art. 6.1(a); Exs. 12-14 (Guaranties) § 8.  Nowhere in its papers does Northern dispute this.  As a result, because the existence of uncured Payment Deficiencies is indisputable, any argument over their amounts is immaterial and must be disregarded. *See Pereira v. Cogan*, 267 B.R. 500 (S.D.N.Y. 2001) (Sweet, J.) ("'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.'" (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

### 3. Northern's Calculated Payment Deficiencies Give Full Credit for Amounts Withheld by First Premier

Mr. Kincheloe never acknowledges Northern's Deficiency calculations (which were prepared under his direction) nor tries to reconcile them with the claims made in his Declaration.  That is because Northern's calculations follow the same methodology Mr. Kincheloe insists upon in his Declaration, yet still show substantial Deficiencies.

In other words, Northern's Servicing Reports credit the amounts withheld by First Premier every month against that month's Required Payment – which is why Northern's calculated Deficiencies are smaller than Sovereign's.  These withheld amounts are reflected in Northern's Servicing Reports at the top of page two as the "Ending Balance" in the "Bank Statements" box.  *See* Kincheloe Dec. Exs. D–I, top of page 2; Schwartz Dec. ¶ 13.[4]  Northern's

---

[4] First Premier sweeps the withheld amounts into Sovereign's Collection Account about a week after month's end. The impact is just a brief delay in paying the withheld amounts to Sovereign. Schwartz Dec. ¶ 13.

Reports include these withheld amounts in "Payments Collected," which it applies against the Required Payment (*see* page 2, Reserve Balance; Payments Collected); Schwartz Dec. ¶¶ 16-17.[5]

Taking again Northern's June 2010 Report (Kincheloe Dec. Ex. D) for illustrative purposes: Northern calculates "Payments Collected" of $1,885,092.99 at the top of page 1 (*see* "Net Payments Collected by Sovereign"). Northern begins with the total face amounts received in the Lockbox Account that month (including bad wires) of $3,408,339.11 ("Total Credits"). Northern subtracts $1,301,075.12 that had been identified and reversed as bad wires ("Total Bank Returns") and required "Adjustments" of $141,046.36, to yield net monthly Lockbox receipts of $1,966,217.63. This amount includes the entire amount withheld by First Premier of $1,110,025.79 (*see* page 2, "Bank Statement; Ending Balance"). *See* Schwartz Dec. ¶¶ 16-17.

Northern then deducts $338,884.65 in taxes and fees that it was required to pay. It then adds $257,760.01, consisting primarily of the "Square-Up Payment" (lessee receipts sent directly to Northern rather than deposited in the Lockbox Account). The result of these adjustments is a net subtraction of $81,124.64 from monthly net Lockbox receipts. *See* Schwartz Dec. ¶¶ 16-17.

Northern's calculations result in a "Net Payments Collected by Sovereign" of $1,885,092.99. Northern applies this amount as "Payments Collected" to the Required Payment of $2,222,160.47 (*see* page 2, "Reserve Balances, Loan Payments"). After also applying the remaining available reserves of $209,851.53 and a small negative adjustment of $8,136.06, Northern calculates a Payment Deficiency of $135,351.02 (*see* Reserve Balances; Ending Balance).

---

[5] By contrast, as Mr. Kincheloe complains, Sovereign's Deficiency calculations do not apply the "Payments Collected" but rather only the smaller amount of "Total Wires" in the "Bank Statements" box, which reflect only the amounts wired by First Premier to Sovereign during the calendar month. *See* Kincheloe Dec. ¶¶ 4, 27.

6

Moreover, even were we to accept Mr. Kincheloe's claim and give Northern additional credit for the amounts withheld by First Premier (which, for the reasons above, would double-count those amounts), the Payment Deficiencies calculate by Northern would still not be offset for any month after June 2010, as the following chart shows:

| Northern Servicing Report | Ending Balance of Lockbox Account | Cumulative Deficiency |
|---|---|---|
| June 2010 | $1,110,025.79 | ($ 135,351.02) |
| July 2010 | $ 696,722.74 | ($ 875,643.48) |
| August 2010 | $ 653,253.86 | ($1,359,485.95) |
| September 2010 | $ 628,715.14 | ($1,897,953.01) |
| October 2010 | $ 658,562.94 | ($2,323,017.25) |
| November 2010 | $ 619,689.12 | ($2,862,912.73) |

    4.    *Mr. Kincheloe Fails To Account For Northern's Payment Of Taxes And Other Deductions From Lockbox Collections*

If the Court wants to pinpoint the precise flaw in Mr. Kincheloe's claims, it is that he tries to hide Northern's monthly deductions of taxes and other account expenses from collected receipts before paying the balance to Sovereign. *See* Schwartz Dec. ¶ 18. These deductions, which total several hundred thousand dollars monthly, are reflected in Northern's calculation of "Net Payments to Sovereign" at the top of page 1 of its Reports. Thus, contrary to Mr. Kincheloe's claims, the monthly Ending Balance of the Bank Statement is not and cannot simply be added to the amounts already wired to Sovereign to make up the Required Payment. *See*, *e.g.*, Kincheloe Dec. ¶ 30. Rather, as Northern's Servicing Reports show, Northern makes substantial deductions from such Ending Balances before remitting the remainder to Sovereign. Since June 2010, Northern's Payments Collected have been insufficient to satisfy the Required Payments.

Thus, based on the clear and unambiguous terms of the Loan Agreements and the Guaranties, and Northern's indisputable defaults under the Guaranties, Sovereign is entitled to summary judgment.

B.      **Northern Is Not Entitled To Discovery**

Northern cannot rely on Rule 56(f) discovery to delay payment of its lawful, indisputable obligation.  While Northern cites several cases holding that pre-discovery summary judgment is "rarely" granted, each of these cases involved fact-intensive claims in which essential evidence was exclusively in the possession of the movant.  Northern cites no case in which a court denied pre-discovery summary judgment to a lender against a defaulting borrower or guarantor.  That is because in that specific context, the "rare" is routine:  courts in this Circuit and District commonly grant pre-discovery summary judgment to lenders against defaulting borrowers or guarantors.  Summary judgment is particularly appropriate here where Northern, in its capacity as Servicer, is already in possession of all the material facts relating to its default.

As this Court has observed, where, as here, the Loan Documents are governed by New York law, there is a strong "New York public policy favoring the enforcement of loan agreements swiftly and according to their express terms."  *Gateway, Inc. v. Vitech Am., Inc.*, 143 F.Supp.2d 391, 397 (S.D.N.Y. 2001) (Hellerstein, J.) (setting pre-discovery summary judgment schedule); *see also UBS AG v. Healthsouth Corp.*,  645 F.Supp.2d 135 (S.D.N.Y. 2008) (same, *citing Gateway*).  "Cases seeking recovery on promissory notes are particularly suitable for disposition via summary judgment, as the moving party need merely establish the absence of a genuine dispute as to execution and default."  *Novick v. AXA Network, LLC*, 2009 WL 2753291 at *1 (S.D.N.Y. Aug. 27, 2009) (Hellerstein, J.) (awarding pre-discovery summary judgment to lender against defaulting borrower, where additional discovery sought by borrower would  be unavailing) (*quoting Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001) (Sweet, J.).

For these reasons, this Court and other Courts of this Circuit and District have repeatedly granted pre-discovery summary judgment to lenders such as Sovereign.  *See*, *e.g*., *Novick,* 2009 WL 2753291 at *1 (Hellerstein, J.) (awarding pre-discovery summary judgment to lender);

8

*Sterling Fin. Services Co., Inc. v. Franklin*, 259 Fed.Appx. 367, 2008 WL 60291 (2d Cir. 2008) (affirming Judge Hellerstein's grant of pre-discovery summary judgment motion by lender against defaulting guarantor); *Tennenbaum Capital Partners LLC v. Kennedy*, 2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009) (creditor suing defaulting guarantor was entitled to pre-discovery summary judgment); *MM Arizona Holdings LLC v. Bonanno*, 658 F.Supp.2d 589, 596-97 (S.D.N.Y. 2009) (pre-discovery summary judgment granted to lender suing defaulting guarantor); *Caslterigg*, 2008 WL 449690 (lender claiming default under a note was entitled to pre-discovery summary judgment even though borrower claimed there was a disputed "material issue of fact as to the correct calculation" of the default); *Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F.Supp.2d 448 (S.D.N.Y. 2003) (bank was entitled to pre-discovery summary judgment against sureties of defaulting obligors); *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F.Supp.2d 352 (S.D.N.Y. 2002 (Lynch, J.) (lessor suing for unpaid rent was entitled to pre-discovery summary judgment); *Pereira v. Cogan*, 267 B.R. 500, 516 (S.D.N.Y. 2001 (Sweet, J.) (trustee suing to enforce promissory notes was entitled to pre-discovery summary judgment); *AAI Recoveries v. Pijuan*, 13 F.Supp.2d 448, 452 (S.D.N.Y. 1998) (defaulting maker of promissory note not entitled to discovery to oppose lender's motion for summary judgment); *Forum Ins. Co. v. Swink*, 1997 WL 773715 (S.D.N.Y. Dec. 11, 1997) (lender suing for default on promissory note was entitled to pre-discovery summary judgment); *Continental Airlines, Inc. v. Lelakis*, 943 F.Supp. 300, 311 (S.D.N.Y. 1996) (where non-movant for summary judgment was equally in possession of relevant evidence, further discovery was unavailing.); *Skandinaviska Enskilda Banken v. Rathaus*, 624 F.Supp. 207, 209-11 (S.D.N.Y. 1985) (Sweet, J.) (lender suing guarantor for default was entitled to pre-discovery summary judgment).

By contrast, each of the cases cited by Northern in which summary judgment was held premature involved fact-intensive claims of which essential evidence was exclusively in the hands of the movant. *See*, *e.g*., *Union Bank, N.A. v. CBS Corp.*, 2009 WL 75087 at *4 (S.D.N.Y. June 10, 2000) (plaintiff's contract claim arising out of the unique, unanticipated circumstances of the Lehman Bros. bankruptcy rested on "basic facts" and "fundamental points" that were exclusively in plaintiff's possession); *Shelton v. The Trustees of Columbia University*, 2004 WL 2979781 (S.D.N.Y. Dec. 17, 2004) (Hellerstein, J.) (Student's claims against the university based on his dismissal after submitting a plagiarized report raised "numerous factual allegations subject to dispute"); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301-304 (2d Cir. 2003) (plaintiff's claim for improper debt collection practices depended on the nature and extent of defendant attorneys' review of his file – information exclusively in defendants' possession); *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97-98 (2d Cir. 2000) (plaintiff claiming to have been illegally demoted in retaliation for his First Amendment-protected speech was entitled to discovery regarding the reasons for his demotion); *Johnson v. Arista Holding, Inc.,* 2006 WL 3511894 at *4 (Dec. 5, 2006 S.D.N.Y) plaintiff asserting fact-intensive copyright claims, which required court to parse plaintiff's individual creative contributions to a joint music composition project, was entitled to depose defendant's expert who had submitted a report in support of defendant's summary judgment motion); *Enron Corp. v. J.P. Morgan Securities, Inc. (In re Enron Corp.)*, 2005 WL 3873891 (Bankr. S.D.N.Y. July 29, 2005) (movant was in "exclusive possession" of "essential facts"); *Berger v. U.S.*, 87 F.3d 60, 65 (2d Cir. 1996) (plaintiff whose knowledge and intent was dispositive to his claim was not entitled to summary judgment before the defendant took discovery into such knowledge and intent).

10

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court enter an order granting Sovereign summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Northern on the grounds that there are no genuine issues of material fact as to any necessary element of Sovereign's claim, and for such other and further relief as this Court deems just and proper.

Dated: February 25, 2011
       New York, New York

    Respectfully submitted,

    SCHIFF HARDIN LLP

    By: /s/ Louis T. DeLucia
        Louis T. DeLucia
        Carl W. Oberdier
        Alyson M. Fiedler
        900 Third Avenue
        New York, New York 10022
        Telephone: (212) 753-5000
        Facsimile: (212) 753-5044

    *Attorneys for Sovereign Bank*

NY\50949544.1